U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG - 9 2018

CLERK, U.S. DISTRICT COURT
By _____
      Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

UNITED STATES OF AMERICA

v.

ROBERT CARL LEONARD, JR.

NO. **3-18CR-410-M**

**(Related to Case Nos. 3:17-CR-678-M & 3:18-CR-169-N)**

## INFORMATION

The United States Attorney Charges:

### Introduction

1.    From in or around 2011 to in or around 2017, **Robert Carl Leonard, Jr.**, the president of Force Multiplier Solutions (FXS), a technology company that put cameras on school buses, paid millions of dollars in bribe and kickback payments to Dallas area officials in exchange for favorable official action, or the promise of favorable official action, related to FXS's business interests and **Leonard**'s aspirations of developing low income housing in Dallas.

2.    Specifically, **Leonard** paid Ricky Dale Sorrells, the superintendent of Dallas County Schools (DCS), in excess of $3 million in bribe and kickback payments in exchange for, amongst other things, **Sorrells**' decision to enter into contracts and licensing agreements on behalf of DCS and to purchase school-bus-camera equipment.

3.    At the same time, **Leonard** paid Person C, a Dallas City Council Member, over

**Information - Page 1 of 11**

$450,000 in bribe and kickback payments/benefits in exchange for favorable official action, or the promise of favorable official action, including Person C's voting on ordinances and authorizations in a way that forwarded FXS's business interests, pressuring the Dallas City Attorney's Office to provide a favorable opinion about the propriety of fines associated with FXS's stop-arm-camera program, and promising to use his/her official position if and when necessary to forward **Leonard**'s efforts to develop low income housing.

4.      To disguise the bribe and kickback payments made to Sorrells and Person C, **Leonard** funneled a significant portion of the illicit payments through various pass-through companies created and operated by his business associate, Slater Washburn Swartwood, Sr., as well as through a law firm.

5.      To further disguise the bribe and kickback payments, Sorrells and Person C received a portion of the bribe and kickback payments into shell companies which they controlled.

6.      The coconspirators created, amongst other things, sham consulting agreements and fake invoices and loans to obscure the illegal purpose of the payments from **Leonard** to Sorrells and Person C.

7.      In total, **Leonard** paid approximately $3.5 million in bribe and kickback payments to Dallas area officials to help secure over $70 million in contracts, agreements, orders, and other beneficial treatment for FXS, all of which the coconspirators concealed from

DCS, its board, the citizens of the school districts in which DCS operated school buses and provided other services, and the citizens of the City of Dallas.

8.      DCS, for its part, was left virtually bankrupt by the agreements it entered into with FXS and was ultimately abolished by voters in November 2017.

### Duty of Honest Services

9.      Until March 2017, Sorrells was the superintendent of DCS.  In that capacity, he had authority to enter into contracts on DCS's behalf that exceeded $50,000 and had the authority over purchasing, including equipment orders.

10.      Sorrells was a public servant as a result of his position.  Sorrells owed a duty of honest services to DCS, the school districts it served, and the citizens thereof to perform the duties and responsibilities of his office free from bias, conflicts of interest, self-enrichment, self-dealing, concealment, deceit, fraud, kickbacks, and bribery.

11.      DCS, the school districts it serviced, and the citizens thereof expected, and were entitled to receive, Sorrells' honest services in his fulfillment of his employment responsibilities.  It was a violation of Sorrells' duty, and of DCS's and the school districts' citizen's  rights to his honest services, for Sorrells to accept bribe and kickback payments from a vendor, such as **Leonard** and FXS, whose contracts, agreements, and purchase orders Sorrells participated in awarding.

12.      Person C served as a Council Member on the Dallas City Council from before the beginning of the conspiracy until June 2015, and upon reelection thereafter in May 2017

to the present.

13.     Person C was a public servant as a result of being a Council Member.  Person C owed a duty of honest services to the citizens of the City of Dallas to perform the duties and responsibilities of public office free from bias, conflicts of interest, self-enrichment, self-dealing, concealment, deceit, fraud, kickbacks, and bribery.

14.     The citizens of the City of Dallas expected, and were entitled to receive, Person C's honest services in the fulfillment of the Council Member's duties.  It was a violation of Person C's duty, and the citizens of the City of Dallas' rights to the Council Member's honest services, for Person C to accept bribe and kickback payments from **Leonard** in exchange for favorable official action or the promise of favorable official action.

15.     By paying and causing the payment of bribes and kickbacks to Sorrells and Person C, **Leonard** deprived DCS, the school districts and their citizens, and the citizens of the City of Dallas of their right to Sorrells' and Person C's honest services in the fulfillment of their official responsibilities.

## Count One
### Conspiracy to Commit Honest Services Wire Fraud
### [Violation of 18 U.S.C. § 1349]

16.     All preceding paragraphs of this Information are realleged and incorporated by

reference as if set forth fully herein.

17.     From in or around 2011 to in or around 2017, in the Dallas Division of the

Northern District of Texas and elsewhere, the defendant, **Robert Carl Leonard, Jr.,**

Sorrells, Person C, Swartwood, and others known and unknown, unlawfully, willfully,

and knowingly did combine, conspire, confederate and agree together and with each other

to violate Title 18, United States Code, Sections 1343 and 1346.

18.     It was a part and object of the conspiracy that **Leonard**, Sorrells, Person C,

Swartwood, and others known and unknown, willfully and knowingly, having devised

and intending to devise a scheme and artifice to defraud, and to deprive DCS, the school

districts it serviced and their citizens thereof, and the citizens of the City of Dallas of

their intangible right to Sorrells' and Person C's honest services as public servants, would

and did transmit and cause to be transmitted by means of wire communication in

interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the

purpose of executing such scheme and artifice, in violation of Title 18, United States

Code, Sections 1343 and 1346, to wit, **Leonard** paid bribe and kickback payments to

Sorrells and Person C in exchange for favorable official action, and in connection

therewith and in furtherance thereof, the coconspirators transmitted and caused to be

transmitted interstate electronic wire transfers of funds.

## Manner and Means of the Honest Services Fraud Conspiracy

BRIBE AND KICKBACK PAYMENTS TO SORRELLS

19.     During the honest services fraud conspiracy, **Leonard** paid Sorrells over $3 million in bribes and kickbacks, including paying a portion of Sorrells' credit card debt and student loan debt.

20.     In return, Sorrells, acting on behalf of DCS, took official action favorable to Leonard and FXS, including, but not limited to, purchasing millions of dollars worth of cameras, many of which were never installed on school buses and instead sat unused in a warehouse, and entering into a $340,000 per month servicing agreement and a $25 million asset purchase/licensing agreement.

BRIBE AND KICKBACK PAYMENTS TO PERSON C

21.     During the honest services fraud conspiracy, **Leonard** paid Person C over $450,000 in bribes and kickbacks, in addition to directly or indirectly contributing over $40,000 to Person C's political campaigns.

22.     In addition to money, **Leonard** provided Person C with bribes and kickbacks in the form of, among other things of value, travel to New Orleans and Austin, a campaign bus, custom made suits, casino chips, and gambling funds for the horse track.

23.     In return, Person C, in his capacity as a City Council Member, took official action favorable to **Leonard** and FXS, including, but not limited to, voting on ordinances and

authorizations in a way that forwarded FXS's business interests, pressuring the Dallas

City Attorney's Office to provide a favorable opinion about the propriety of fines

associated with FXS's stop-arm-camera program, and promising to use the Council

Member's official position if and when necessary to forward **Leonard**'s efforts to

develop low income housing.

CONCEALMENT OF THE BRIBE AND KICKBACK PAYMENTS

24.    As part of the conspiracy, the coconspirators undertook significant efforts to

disguise and conceal the source and purpose of the bribe and kickback payments to

Sorrels and Person C.

25.    **Leonard** generally did not pay Sorrells or Person C directly.  Instead, **Leonard**

caused approximately $2.4 million in bribe and kickback payments to be transferred to

pass-through entities controlled by Swartwood, including Elf Investments, Cambridge

Realty Group, LLC (Cambridge), and Anrock Realty Services, LLC (Anrock), after

which Swartwood, at Leonard's direction, would pay Sorrells, Person C, or shell

companies that they controlled.

26.    Sorrells received approximately $2 million in bribe and kickback payments

laundered through Swartwood's companies.

27.    Person C received approximately $390,000 in bribe and kickback payments

laundered through Swartwood's companies.

28.    **Leonard** also caused approximately $800,000 in bribe and kickback payments to

be transferred to a law firm, after which the law firm, at **Leonard**'s direction, would pay
Sorrells or shell companies that Sorrells controlled.

29.     As part of the conspiracy, and as a further act of concealment, Sorrells and Person
C opened shell companies so it did not appear that they were directly receiving payments.

30.     The coconspirators, in an attempt to grant the bribe and kickback payments an air
of legitimacy, created sham consulting agreements.

31.     As a further act of concealment, the coconspirators, at some point in the
conspiracy, attempted to recharacterize past "consulting" payments to Sorrells and Person
C as a "loan," and executed fake loan documents to that end.

32.     At various points during the conspiracy, **Leonard** conspired to have Sorrells start
to make payments on the loan to make it appear legitimate, but **Leonard** assured Sorrells
that he would recycle the fake payments back to Sorrells, potentially through PayPal.

33.     In addition to bribe and kickback payments made through Swartwood's companies
and the law firm, **Leonard** also paid over $200,000 toward Sorrells's credit card and
student loan debt.

34.     In order to disguise a portion of these bribe and kickback payments, **Leonard**
created and funded a bank account for a nonexistent company and then used the entity to
pay some of Sorrells' credit card debt.

35.     When **Leonard** made bribe and kickback payments directly to Person C, Person C
would often cash the checks at a liquor store or pawn shop to conceal the payments.

All in violation of 18 U.S.C. § 1349.

## Forfeiture Notice
[18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c)]

The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of the offense in violation of 18 U.S.C. § 1349 set forth in Count One of this Information, the defendant, **Robert Carl Leonard, Jr.**, shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes the following:

- 2008 Bentley Continental GT, Vehicle Identification Number SCBDR33W58C057347, titled to Noella, LLC;

- 2012 Jeep Grand Cherokee, Vehicle Identification Number 1C4RJECT0CC363070, titled to Force Multiplier, LLC;

- $109.39 in United States currency seized from the account ending in x0851 on June 15, 2017;

- $29,449.64 in United States currency seized from the account ending in x3128 on June 15, 2017;

- $150,770.90 in United States currency seized from the account ending in x9508 on June 15, 2017;

- $557,273.60 in United States currency seized from the account ending in x2057 on June 15, 2017;

- $564.00 in United States currency seized from the account ending in x8321 on June 15, 2017;

- Collection of seven paintings by artist David Harouni seized on June 15, 2017;

- Assorted Jewelry seized on June 15, 2017: One ring, white metal with white stones; Four Infinity rings, white metal and yellow metal, located in a "Rothschild Diamond" box; One ring, yellow and white metal with white stones in a "Bachendorf's" box; and One floral necklace, white metal with white stones in a "Bachendorf's" box.

If any of the property described above, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

ERIN NEALY COX
UNITED STATES ATTORNEY


ANDREW O. WIRMANI
Assistant United States Attorney
Texas Bar No. 24052287
JOSEPH A. MAGLIOLO
Assistant United States Attorney
Texas Bar No. 24074634
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
Tel:  214.659.8600
Fax: 214.659.8809